# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ernest Ngonga<br>A 093450499<br>20 Lovett Drive<br>Lovettsville, VA 20180 | ) ) ) ) ) | |
| Danny Fokou<br>20 Lovett Drive<br>Lovettsville, VA 20180 | ) ) ) ) | |
|       Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) ) | |
| Jeff Sessions, Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530-0001 | ) ) ) ) ) | |
| Kimberly Zanotti, Field Officer Director<br>US Department of Homeland Security<br>USCIS<br>Washington Field Office<br>2675 Prosperity Avenue<br>Fairfax, VA 20598-2400 | ) ) ) ) ) ) ) | |
| Sarah Taylor, District Director<br>US Department of Homeland Security<br>USCIS<br>Washington Field Office<br>2675 Prosperity Avenue<br>Fairfax, VA 20598-2400 | ) ) ) ) ) ) ) | |
| Kirstjen M. Nielsen, Secretary, DHS<br>245 Murray Lane, S.W.<br>Washington, DC 20528 | ) ) ) ) | |
| L. Francis Cissna, Director, USCIS<br>20 Massachusetts Avenue, N.W.<br>Washington, DC 20529 | ) ) ) ) | |
|       Defendants | ) ) | |

1

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. The Plaintiffs, Ernest Ngonga and Danny Fokou, through undersigned counsel, complaint of the Defendants, Sarah Taylor, District Director, Washington District Office, U.S. Citizenship and Immigration Services; Kimberly Zanotti, Field Office Director, Washington District Office, U.S. Citizenship and Immigration Services; L. Francis Cissna, Director, U.S. Citizenship and Immigration Services; Kirstjen M. Nielsen, Secretary, U.S. Department of Homeland Security; and Jeff Sessions, Attorney General of the United States as follows:

**PREFATORY STATEMENT**

1. This is an action brought pursuant to Section 10b of the Administrative Procedure Act, 5 U.S.C. §702, and 28 U.S.C. §1331, seeking review of a decision by the Defendant U.S. Citizenship and Immigration Services ("USCIS"), which was affirmed by the Board of Immigration Appeals ("BIA"), to deny a Form I-130 Petition for Alien Relative filed by Ernest Ngonga on behalf of his wife Danny Fokou ("the I-130 Petition"). The agency's decision to deny the I-130 Petition was arbitrary, capricious, an abuse of discretion, and was not supported by substantial and probative evidence. The Plaintiffs presented overwhelming evidence in support of the I-130 Petition and lacks any probative evidence in the evidentiary record supports the agency's allegation that Ms. Fokou engaged in marriage fraud and thus is precluded from approval of any subsequent visa petition pursuant to Section 204(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1154(c). The agency's decision lacks a rational basis and should be reversed.

2. The I-130 Petition was supported by overwhelming evidence demonstrating the bona fide nature of the Plaintiffs' marriage.  Furthermore, the evidentiary record does not support USCIS's allegation of prior marriage fraud by Ms. Fokou.  The USCIS and BIA decisions rest on unsubstantiated statement by Mr. Ngonga taken out of context during his naturalization interview, which is hearsay.  The statement was during a naturalization interview at which Ms. Fokou was not present nor a party involved.  There is nothing in the evidentiary record to suggest that Ms. Fokou did not in fact have a bona fide marriage to Mr. Keyi.  Ms. Fokou presented documents to show that she and Mr. Keyi did establish a marriage together.  The evidentiary record does not present substantial and probative evidence and is therefore contrary to the established case law in this area.  While the record may support Mr. Ngonga's interpretation of Ms. Fokou and Mr. Keyi's marriage, it does not support the allegation that Ms. Fokou entered into her marriage with Mr. Keyi to procure an immigration benefit and her permanent residence, and is not substantial evidence, contrary to the agency erroneous speculation and conclusion.

3. Consequently, the Plaintiffs seeks an order reversing the agency's decision as arbitrary, capricious, contrary to law, and unsupported by the evidence of record. The agency's erroneous decision has caused irreparable and continuing harm to the Plaintiffs, as denial of the I-130 Petition deprives Ms. Fokou of the ability to obtain U.S. lawful permanent residency and renders her subject to removal from the United States, thereby resulting in separation from her husband of seven years, their three U.S. citizen children and banishment from the country that has been her home for the past fourteen years.

### a. JURISDICTION

4. This is a civil action brought pursuant to 5 U.S.C. §701 et seq., the Administrative
   Procedure Act ("APA"), and 28 U.S.C. §1331 (federal subject matter jurisdiction), as
   well as 8 U.S.C. §1101 et seq., the Immigration and Nationality Act ("INA").  The
   original jurisdiction is vested in this Court by 8 U.S.C. §1329 (jurisdiction of the
   district courts), 28 U.S.C. §1346(a)(2) (civil actions against the United States), and
   28 U.S.C. §2201 (declaratory relief), to redress the deprivation of rights, privileges,
   and immunities secured to the Plaintiffs.

### A. *Subject Matter Jurisdiction*

5. Under the APA, "[a] person suffering legal wrong because of agency action, or
   adversely affected or aggrieved by agency action within the meaning of the relevant
   statute, is entitled to judicial review thereof."  5 U.S.C. §702.  The APA provides
   further that the "final agency action for which there is no other adequate remedy in
   a court [is] subject to judicial review."  5 U.S.C. §704.  The APA defines "agency
   action" to include "the whole or part of an agency rule, order, license, sanction,
   relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. §551(13).
   Agency action includes a final decision denying an I-130 Petition for Alien Relative
   pursuant to INA §204(c) and 8 C.F.R. §204.2(a)(I)(ii). *See, e.g., Asamoah v.*
   *Napolitano,* 2010 U.S. Dist. LEXIS 129452, at *9 (D. Md. Dec. 8, 2010) ("The APA, in
   conjunction with the federal question jurisdiction statute, provides the statutory
   basis for a court to review a final agency action, in this case the USCIS's denial of

[plaintiff's] I-130 petition."); *see also Ginters v. Fraizer*, 614 F.3d 822, 828-29 (8th

Cir. 2010) (ruling that U.S. District Court has subject matter jurisdiction to review

USCIS's denial of I-130 Petition for Alien Relative); *Ogbolumani v. Napolitano*, 557

F.3d 729, 733 (7th Cir. 2009) (same); *Ruiz v. Mukasey*, 552 F.3d 269 , 274-76 (2d Cir.

2009) (same).

6.   The APA does not independently provide a basis for subject matter jurisdiction.

*Califano v. Sanders*, 430 U.S. 99, 107 (1977).  "Pursuant to 28 U.S.C. §1331, though, a

federal district court has jurisdiction over 'all civil actions arising under the

Constitution, laws, or treaties of the United States.'" *Liu v. Novak*, 509 F. Supp. 2d 1, 8

(D.D.C. 2007) (quoting 28 U.S.C. §1331).  As this Court has recognized, "the APA, in

conjunction with the federal question jurisdiction statute, provides the statutory

basis for a court to review a final agency action, in this case, the USCIS's denial of

[plaintiff's] I-130 petition." *Asamoah*, 2010 U.S. Dist. LEXIS 129452, at *9.

## B. Standing

7.   Since the Plaintiffs have suffered an injury- in- fact; the denial of their I-130 Petition

and Ms. Fokou's consequent inability to obtain adjustment to lawful permanent

resident status on that basis thus the Plaintiffs have standing for the complaint. *See,*

*e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that

standing requires a plaintiff to show (1) an injury in fact, (2) a causal connection

between the injury and the complained-of conduct, and (3) a likelihood that the

injury will be redressed by a favorable decision).  The Plaintiffs have standing as

they have "'alleged such a personal stake in the outcome of the controversy' as to

warrant their invocation of federal court jurisdiction and to justify exercise of the

court's remedial powers on [their] behalf." *Warth v. Seldin*. 422 U.S. 490, 498-99

(1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Defenders of*

*Wildlife v. Gutierrez*, 532 f.3d 913, 924 (D.C. Cir. 2008).  As the courts have explained,

"The redressability inquiry poses a simple question: If plaintiff secured the relief

[he] sought, ... would it redress [his] injury?"  *Wilderness Society v. Norton*, 434 F.3d

584 (D.C. Cir. 2006).  A favorable decision by this Court, reversing the Defendants'

unreasonable denial of the Plaintiff's I-130 Petition, will grant the Plaintiffs the relief

they seek.

### C. Ripeness

8. This case is ripe for review because the Plaintiffs have exhausted their

administrative remedies and no appeal of the agency's decision is pending.  On

November 29, 2017, the Board of Immigration Appeals ("BIA") dismissed the

Plaintiff's appeal of USCIS's June 2, 2017 decision denying the I-130 Petition filed by

Ernest Ngonga on behalf of his wife Danny Fokou.  No further administrative review

is available to the Plaintiffs. *See* 8 C.F.R. §1204.1.  Thus, the BIA's decision is a final

agency action that is ripe for review by this Court.

## II.   VENUE

9. Venue is proper under 28 U.S.C. §1391(e), because this is an action against officers

and agencies of the United States in their official capacities and no real property is

involved in the action.

### III.   PARTIES

10.   The Plaintiff, Danny Fokou, is a native and citizen of Cameroon who has resided in the United States since 2003, for more than fourteen years.  Ms. Fokou is the intended beneficiary of a Form I-130 Petition for Alien Relative ("I-130 Petition") filed by her husband, Ernest Ngonga.  The Plaintiff, Ernest Ngonga, is a United States Lawful Permanent Resident.  He is the petitioner of an I-130 Petition filed on behalf of his wife, Danny Fokou.  Ernest Ngonga and Danny Fokou have been married since September 25, 2010, and they reside together in Lovettsville, VA, in a home they own together since 2012.

11. The Defendants, Sarah Taylor, District Director, Washington District Office, U.S. Citizenship and Immigration Services; Kimberly Zanotti, Field Office Director, Washington District Office, U.S. Citizenship and Immigration Services; L. Francis Cissna, Director, U.S. Citizenship and Immigration Services; Kirstjen M. Nielsen, Secretary, U.S. Department of Homeland Security; and Jeff Sessions, Attorney General of the United States are charged by law with the statutory and regulatory obligation to determine eligibility for I-130 Immigrant Petitions for Alien Relative, pursuant to INA §§201(b)(2)(A)(i), 204(a)(1)(A) and 8 C.F.R. §§204.1(a)(1), 1204.1.

### IV. STATEMENT OF FACTS

***A.  Ms. Fokou and Mr. Ngonga's Current Marriage and I-130 Petition***

12. The Plaintiff, Danny Fokou, is a native and citizen of Cameroon who was first admitted to the United States on July 3, 2003 as a B1/B2 nonimmigrant.  She has lived in the United States since that time, for more than fourteen years.  Ms. Fokou is

married to Ernest Ngonga, a U.S. Lawful Permanent Resident and they reside in Lovettsville, VA, in a home they own together since January 2012.  They have been married for more than seven years.  They have three United States Citizen Children together; Ian Ngonga is in middle school and is an A+ student and plays football in a private club; Owen Ngonga is in 3rd grade and plays soccer and their youngest daughter, Shanell Ngonga, is in Kindergarten, and does ballet.

13. Ms. Fokou and Ms. Ngonga fell in love long before they were married, however, Mr. Ngonga was a playboy; he just wanted to have fun with Ms. Fokou and other women. Ms. Fokou has known Mr. Ngonga since April of 2004 when he came from Cameroon fleeing for his safety and his life seeking asylum in the U.S.  However, Ms. Fokou's arms were always open when he came back and they had two children together while they were in different relationships.  Mr. Ngonga did not do right by Ms. Fokou or their children or want to marry her previously until after Ms. Fokou divorced Mr. Valery Keyi.  To make sure another person didn't take Ms. Fokou away from her again, and because he was so jealous of Ms. Fokou's relationship with Mr. Keyi, Mr. Ngonga proposed and the couple got married on September 25, 2010 and their third child was born on April 20, 2011.  They have had a stable loving family home, happily married, at last, and raising their three kids with love and affection since 2010, for more than seven years.

**B. Ms. Fokou's Marriage to Valery Keyi**

14. Ms. Fokou married Mr. Valery Keyi for love, for no other reason; their previous relationship was a bona fide marriage. Ms. Fokou would have difficult pregnancies, crying all the time, alone, and the only person that was there for her was her former husband, Mr. Valery Keyi, who was their roommate, as they were all living in the same apartment and he was a good friend. During the difficult times, in the middle of the night, Mr. Keyi was the one driving Ms. Fokou to the hospital. Their intimate relationship started when Ms. Fokou was pregnant with her second child with Mr. Ngonga, as Mr. Keyi was always that shoulder to cry on, he listened, and never judged. One thing led to another and they started developing feelings and they fell in love. To show how serious he was, Mr. Keyi wanted to marry Ms. Fokou even knowing she was carrying someone else's baby, which was everything to her. Ms. Fokou and Mr. Keyi got married on May 9, 2008 shortly before Owen Ngonga was born. Ms. Fokou barely saw Mr. Ngonga only once a month despite having two children together.

15. Mr. Valery Keyi and Ms. Danny Fokou's had their I-130 Interview on August 28, 2009. In a sworn affidavit submitted with the BIA appeal, Mr. Keyi states he "was troubled when I was asked by the Officer why I would marry a woman who has many kids with someone else, and it really hurt me. The questioning of our relationship destroyed it and made it difficult for me to face the hurt and pain that my wife had children with someone else. I told Danny I thought she should reconsider raising her children with their father. I thought that was best for the children." *See BIA appeal.*

16. At their interview, Mr. Keyi refused to sign a sworn statement and asked to withdraw his Form I-130 filed on Ms. Fokou's behalf. However, Mr. Keyi provided a sworn affidavit in support of the I-130 filed on Ms. Fokou's behalf dated January 10, 2015 and he also provided a second sworn affidavit with response to the NOID in support of the petition dated March 28, 2017, confirming that the previous marriage to Ms. Fokou was bona fide, not fraudulent, and not for immigration purposes.

17. Further, during a USCIS site visit to Mr. Keyi's home on December 13, 2016, more than six years after Mr. Keyi and Ms. Fokou's marriage ended, Mr. Valery's wife stated "People get married and divorced for different reasons" which is true and has no negative bearing on the previous marriage or provides substantive and probative evidence of fraudulent marriage.

*C. Mr. Ngonga's Naturalization Interview*

18. Mr. Ngonga had a naturalization interview on September 4, 2014. USCIS is citing to a statement made nearly six years after Ms. Fokou and Mr. Keyi were married, more than four years after they were divorced, and nearly four years after his I-130 petition on behalf of Ms. Fokou was filed. Further the statement was made during his naturalization interview not the I-130 interview for Ms. Fokou's petition. This statement was not made contemporaneously or even close to date of time of marriage. The statement made during Mr. Ngonga's naturalization interview is not relevant to Ms. Fokou's I-130 petition.  The Service is using statements by Mr. Ngonga, an unrelated party to the former marriage between Mr. Keyi and Ms. Fokou, which is hearsay.

10

## V. CAUSE OF ACTION

### A. Standard for Approval of I-130 Petition for Alien Relative

19. A United States Lawful Permanent Resident wishing to sponsor his spouse for lawful

    permanent resident status must file with USCIS a Form I-130 Petition for Alien

    Relative. *See* 8 C.F.R. §204.1(a)(1), 204.2(a). The statutory provision authorizing

    the I-130 process provides, in relevant part, that "the Attorney General, shall, if he

    determines that the facts stated in the petition are true ..., approve the petition[.]"

    INA §204(b), 8 U.S.C. §1154(b). The test for a bona fide marriage under the

    immigration laws is whether at the time of the inception of the marriage, the parties

    intended to establish a life together. *Lutwak v. United States*, 344 U.S. 604 (1954);

    *Damon v. Ashcroft*, 360 F.3d 1084, 1089 (9th Cir. 2004); *Matter of Laureano*, 19 I& N

    Dec. 1 (BIA 1983).

20. The INA further provides that "no petition shall be approved if... the alien has

    previously been accorded, or has sought to be accorded, an immediate relative or

    preference status as the spouse of a citizen of the United States... by reason of a

    marriage determined by the Attorney General to have been entered into for the

    purpose of evading the immigration[.]" INA §204(c)(1), 8 U.S.C. §1154(c)(1). A

    determination of marriage fraud made pursuant to INA §204(c) must be supported

    by "substantial and probative evidence." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th

    Cir. 2006); *see also* 8 C.F.R. §204.2(a)(1)(ii); *Matter of Tawfik*, 20 I & N Dec. 166, 167

    (BIA 1990). In order for evidence to be substantial, it must be "more than a scintilla,

    and must do more than create a suspicion of the existence of the fact to be

    established. 'It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Noriega v. Gonzales,* 2009 U.S. Dist LEXIS 68811, at *11 (D.N.J. Aug. 6, 2009).

### B. Standard and Scope of Review

21. As this Court has held, the APA, along with the federal question statute, provides jurisdiction for review of a final agency action by USCIS to deny an I-130 petition. *Asamoah,* 2010 U.S. Dist. LEXIS 126452, at *9. A district court's review under the APA is deferential and generally is limited to determining whether the agency action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Id.* at *10; *see also Ohio Valley Envlt. Coal. V. Aracoma Coal,* 556 F.3d 177, 192 (4th Cir. 2009). An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for its decision. *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42-43 (1983). A reviewing court "must overturn any finding of marriage fraud not supported by substantial and probative evidence." *Bangura,* 434 F.3d at 502.

22. Judicial review under the APA normally is limited to the administrative record that was before the agency when it made its decision. *Voyageurs Nat'l Park Ass'n v. Norton,* 381 F.3d 759, 766 (8th Cir. 2004). However, some courts have found that an incomplete record can be a basis for an exception to the rule. *See, e.g. Sabhari v. Cangemi,* 2005 U.S. Dist. LEXIS 3550, at *6-*- (D. Minn. Mar. 9, 2005) (decrying a "dearth of information" in the record pertaining to USCIS's denial of the plaintiffs' second and third visa petition, and upholding the judge's discovery order that was "narrowly tailored to the issue at hand and [] not overly burdensome").

23. Even though USCIS enjoys broad discretion to grant or deny immigrant petitions, this discretion is not unfettered. The agency cannot base it allegations and conclusions without substantial evidence. Where it does so, the agency's action is considered arbitrary and capricious and an abuse of discretion. *See* 5 U.S.C. § 706.

### A. The USCIS Has Not Met Its Burden to Under Section 204 (c) of the Act That Record Contains Substantial and Probative Evidence that Ms. Fokou's Marriage was Entered Into For the Purpose of Evading the Immigration Laws

24. The decision by USCIS denying Mr. Ngonga's I-130 Petition on behalf of his wife and the subsequent BIA decision affirming that denial, are not supported by substantial evidence. In its decision, the BIA states Mr. Ngonga's statement during his naturalization interview "are highly relevant to the section 204(c) issue in the instant case. The Director properly relied on the petitioner's 2014 admissions in her present decision" Decision at 2.

25. However, this argument is flawed and again points to the fact that there is no substantial or probative evidence that Ms. Fokou entered the marriage to Mr. Keyi to commit fraud or to procure an immigration benefit. The BIA's conclusion is based in speculation, particularly where it states that Mr. Ngonga's statements are relevant to Mr. Keyi's I-130 petition on behalf of Ms. Fokou.

26. In order for a visa petition to be barred by INA 204(c), there must be "substantial and probative evidence" of such an attempt or conspiracy and the derogatory evidence must be contained in the alien's file. See 8 CFR 103.2 (b) (16) (i), 204.2(a) (1) (ii); Matter of Tawfik, 20 I&N Dec.166, 167 (BIA 1990). If there is substantial and probative evidence, "the district director must deny any subsequent visa petition for

immigrant classification filed on behalf of such alien, regardless of whether the alien

received a benefit through the attempt or conspiracy. As a basis for the denial it is

not necessary that the alien have been convicted of, or even prosecuted for, the

attempt or conspiracy." See Matter of Tawfik at 167. In reaching such a conclusion,

USCIS ".....may rely on any relevant evidence, including evidence having its origin in

prior Service proceedings involving the beneficiary, or in court proceedings

involving the prior marriage. Ordinarily, the district director should not give

conclusive effect to determinations made in a prior proceeding, but, rather, should

reach his [or her] own independent conclusion based on the evidence before him [or

her]." See Matter of Tawfik at 168.

27. There is no such evidence in this case.  Mr. Ngonga's statement during his

naturalization interview is not relevant to Ms. Fokou's previous marriage nor does it

document an attempt or conspiracy.   Further, Mr. Ngonga obtained his asylum

status in 2007, when Ms. Fokou could have benefitted if they were in collusion but

she was in another marriage which was valid and has not been in question here.

28. There is no evidence of an attempt or conspiracy to warrant finding of 204 (c) in this

case as none of the examples cited by USCIS in its decision apply.  Such evidence

may consist of an admission by the beneficiary or spouse that they colluded to evade

the immigration laws. See Ghaly v INS, 48 F.3d 1426 (7th Cir 1995); Salas-Velazquez

v INS, 34 F.3d 705 (8th Cir. 1994). Further, such evidence can be found where the

spouse was paid to marry the beneficiary or where the marriage was never

consummated, where the spouses never cohabitated, and where the spouses never

held themselves out to family and friends as husband and wife. See Matter of Phillis,

14

15 I&N Dec.385 (BIA 1975). Where there is "substantial and probative evidence" of prior marriage fraud in the record, the burden then shifts to the petitioner to overcome this evidence. Hence, the petitioner must present evidence to show that the prior marriage was not entered into the primary purpose of evading immigration law. See Matter of Phillis at 386.  None of these apply in this case and the Service has not met its burden under 204 (c).

**B. The USCIS and BIA Erroneously Utilizes Hearsay Statement to Deny the I-130 Petition Which is Fundamentally Unfair**

29. The USCIS and BIA based their denials on irrelevant, uncorroborated hearsay evidence in Mr. Ngonga's statement made during his naturalization interview.  This uncorroborated statement is directly contradicted by sworn affidavits from  Mr. Keyi and Ms. Fokou and substantial documentary evidence provided by the Plaintiffs, which convincingly establish Ms. Fokou never engaged in marriage fraud and that her prior marriage was not entered into for the purposes of evading the immigration laws.  The agencies unreasonably discounted and disregarded this rebuttal evidence.  This reliance on hearsay is fundamentally unfair and thus should not be admissible in administrative proceedings and should be stricken from the record.  Seghal v. Johnson, 105 F. Supp. 3d 860, 2015 U.S. Dist. LEXIS 63147; Ogbolumani v. Napolitano, 557 F.3d 729, 736 (7th Cir. 2009);; *see also Pouhova v. Holder*, 726 F.3d 1006, 1011 (7th Cir. 2013); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004).

30. The hearsay statement of Mr. Ngonga as a basis for the agencies denial is remarkable as the record contains affidavits provided by Mr. Ngonga, Ms. Fokou, and Mr. Keyi contradicting the statement.  Further, the statement relied on by the

agencies are unreliable because Mr. Ngonga is clearly biased, was not a party to the marriage, and cannot reasonably be expected to confirm the marriage was bona fide.

31. In fact, Mr. Ngonga provided a reasonable explanation for his statement. In his affidavit, Mr. Ngonga states:

> My wife's marriage to Valery, while bona fide, is a sore spot for me. She is the mother of my children, and I love her, but I could not do right by her. To see her with another man, made me jealous and I could not believe they loved each other; it was too hard for me to take. Officer Smith during my naturalization interview was hostile and she asked me so many unrelated questions among which included whether my wife married Valery for her green card. I would never do anything to harm my wife, I love her, and I know she did not marry Valery for a green card. What I meant to say to the Officer was that my wife said Immigration doubts the marriage between Valery and her because she had children with me while she was married to him. I was caught off guard by the question because the Officer was judging me and my wife and our life when she questioned why we were having children while we were both married to other people. While I made mistakes at Danny's expense and harmed her and my children, I have now made it right and we are together as a family.

*See BIA Appeal.*

32. Further, the BIA failed to consider Ms. Fokou's statement regarding Mr. Ngonga's statement. In her affidavit, Ms. Fokou states:

> My marriage to Valery is a sore spot for him. I am the mother of his children, and to see me with another man made him jealous. Officer Smith during his naturalization interview was hostile and she asked him so many unrelated questions among which included whether I married Valery for a green card. **Nothing discussed during my husband's naturalization interview should be relevant to my I-130 petition and green card.** My husband is not a reliable source for the marriage between Valery and I as he was not a party to the relationship and he is my current husband

whom I had children with while I was married to Valery so clearly he is biased and has ill feelings about the relationship.

*See BIA Appeal.*

33. The agencies have applied a glaring double standard in this case, discounting numerous sworn affidavits from direct witnesses to the marriage, Ms. Fokou and Mr. Keyi, and utilizing third party hearsay by Mr. Ngonga purportedly because they were corroborated by additional supporting evidence. The agencies acceptance of Mr. Ngonga's statement while at the same time unreasonably discrediting Ms. Fokou and Mr. Keyi's statement is arbitrary, unreasonable, and in violation of the agency's duty to fairly adjudicate petitions based on the totality of the evidence presented, as well as requirements for 204 (c) finding.

**C. The USCIS and BIA Did Not Allow Ms. Fokou or Mr. Keyi to Address Mr. Ngonga's Statement Which is an Abuse of Power and Direction**

34. In order to further investigate into the matter, at no point did USCIS interview either Ms. Fokou or Mr. Keyi about Mr. Ngonga's statements made during his naturalization interview. Statements made during Mr. Ngonga's naturalization interview are not relevant to Ms. Fokou's I-130 petition. Further, statements by Mr. Ngonga, an unrelated party to the former marriage between Mr. Keyi and Ms. Fokou and statements made during Mr. Ngonga's naturalization interview should not be admissible and/or part of the record for Ms. Fokou's I-130 petition.

35. The substantial evidence standard requires the court "must determine whether substantial evidence supports a finding by *clear and convincing evidence* that [the beneficiary] committed marriage fraud." *Id.* at 881 (quoting *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003). In this case, there is no clear and

convincing evidence that Ms. Fokou committed marriage fraud with Mr. Keyi. The Service is using statements by Mr. Ngonga, an unrelated party to the former marriage between Mr. Keyi and Ms. Fokou, during his naturalization interview, as a reason to deny the I-130 petition. This is not clear and convincing evidence that Ms. Fokou committed marriage fraud; only what Mr. Ngonga thinks about Ms. Fokou's former marriage. This is not substantial evidence of marriage fraud but hearsay and its use is fundamentally unfair.

36. In one of the leading cases regarding INA §204(c), the BIA finds that the focus is on the alien in that "the statute itself does not mention actions taken by United States citizen or lawful permanent resident spouses but instead focuses on aliens." *Matter of Kahy*, 19 I & N Dec. 803, 806 (1988). The Court further established that "where there is evidence in the record to indicate that the beneficiary has been an *active participant* in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Id.* In this case, there should not be any shift in the evidentiary burden because the record does not suggest that Ms. Fokou engaged in marriage fraud. There is no evidence in the record pointing to the fact that she entered the marriage without the intent to make a life with Mr. Keyi. There are no statements from Mr. Keyi asserting or even suggesting that Ms. Fokou engaged in fraud. To the contrary there are two statements in the record where Mr. Keyi confirms the bona fide marriage to Ms. Fokou. All USCIS can point to is statement made by Mr. Ngonga during his naturalization interview, but the inquiry into the bona fide nature of marriage subsequent to Mr. Ngonga's statement was never done,

and the Service is relying on Mr. Ngonga's statements without questioning Mr. Keyi
or Ms. Fokou.

37. Further, during a USCIS site visit to Mr. Keyi's home on December 13, 2016, <u>more
than six years after Mr. Keyi and Ms. Fokou's marriage ended</u>, Mr. Valery's wife
stated "People get married and divorced for different reasons" which is true and has
no negative bearing on the previous marriage or provides substantive and probative
evidence of fraudulent marriage. This mitigating evidence was note even mentioned
by BIA or USCIS though certainly it would have been if it had been negative.

38. As such, the process by which Ms. Fokou's and Mr. Ngonga's I-130 petition was
denied was inadequate. There were two witnesses to the marriage: Ms. Fokou and
Mr. Keyi. In this case, it is not possible to determine that Mr. Ngonga's statement is
true and that Ms. Fokou and Mr. Keyi's statement is false solely by reading them. In
addition, Ms. Fokou presented substantial documentary evidence to corroborate her
claim that the marriage was bona fide. Therefore, under the specific circumstances
of this case, due process requires a hearing with an opportunity for Ms. Fokou and
Mr. Keyi to address Mr. Ngonga's statements.

**D. The USCIS and BIA Are Utilizing Mr. Ngonga's Hearsay Statement and Yet Not
Given Weight to Mr. Keyi and Ms. Fokou's Statements Which is An Abuse of
Power and Discretion**

39. In its decision, the BIA states "we are also unpersuaded by the affidavit submitted by
the beneficiary's third husband. This former spouse has an interest in not being
found a party to marriage entered into for purpose of evading immigration laws.
The Director properly gave greater weight to the petitioner's sworn statement in his

naturalization interview and the corroborating evidence supporting that admission." Decision at 2.

40. However, this argument is flawed and the Service is incorrectly dismissing Mr. Keyi's 2015 and 2017 statements as substantive and probative evidence of bona fide former marriage to Ms. Fokou and instead utilizing a statement Mr. Ngonga, an unrelated party to her former marriage, made under duress, as substantial and probative evidence of marriage fraud, which is an abuse of power, and legally and factually incorrect. Mr. Keyi has provided two affidavits confirming the marriage to Ms. Fokou was bona fide. However, instead of utilizing these notarized statements as evidence of bona fide marriage, the Service is inferring an erroneous conclusion in contrast to the substantive and probative evidence provided of a bona fide marriage. Essentially, the Service indicates the August 28, 2009 withdrawal is substantial and probative evidence, however, Mr. Keyi's two sworn affidavits, are not evidence of bona fide marriage, which is incorrect and an abuse of power. The Service cannot consider Mr. Ngonga's statement as substantial and probative evidence of marriage fraud, and not give equal or more weight to two sworn affidavits from Mr. Keyi who was a party to the marriage to Ms. Fokou.

41. Therefore, the Service is erroneously dismissing affidavits from Mr. Keyi as evidence, and making erroneous conclusions, despite documentation in contrast to their false conclusion. USCIS cannot require certain primary evidence and hold such documents as proof of a bona fide marriage and then summarily dismiss them. This creates a problem for petitioners and applicants like Mr. Ngonga and Ms. Fokou because USCIS creates a policy where most documents are rejected. This policy

would then be <u>contrary to due process and fairness</u> because it does not allow couples to present many documents without fearing that USCIS will dismiss the evidence and make a finding of a sham marriage.

42. Federal courts have used several tests to determine whether a marriage was a sham and entered into for the purposes of evading immigration laws. The test generally used by the courts is whether the marriage was fraudulent-at-inception. This can be determined if the bride and groom did not intend to establish a life together and live in marital union. *Lutwak v. U.S,* 344 U.S. 604 (1954); *Bark v. INS,* 511 F.2d 1200 (9th Cir. 1 1975); *Matter of Mckee,* 17 I. & N. Dec. 332(BIA 1980); *Matter of Laureano,* 19 I. & N. Dec. 1 (BIA 1983). The courts have also looked to the petitioner's subjective state of mind. For USCIS to reasonably infer that the marriage was a sham, it should have documented evidence that the married couple was not living in the same residence and were not sharing financial resources and burdens. The conduct of the parties before and after their marriage is relevant to their intent at the time of their marriage. *Matter of Soriano,* 19 I. & N. Dec. 764 (BIA 1988). We have included substantial evidence to verify that Ms. Fokou and Mr. Keyi's marriage was bona fide at inception; they resided together and shared financial resources and burdens, and have both confirmed in sworn affidavits the bona fide marriage.

43. In sum, it is evident that USCIS and the BIA do not have substantive and probative evidence in the record to support their §204(c) finding. Thus, this conclusion is both arbitrary and capricious. It is evident that USCIS and the BIA erred by ignoring the substantial documentary evidence provided in support of the I-130 petition. The agency's decision also amounts to an abuse of discretion, in that the agencies

failed to adjudicate the I-130 petition in accordance with the governing statute and regulations or its own published guidance.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court.

1. Declare unlawful and set aside the Defendant USCIS's decision dated June 2, 2017 and the BIA's November 29, 2017 opinion affirming that decision;

2. Approve the I-130 Petition for Alien Relative filed by Plaintiff Ernest Ngonga on behalf of Plaintiff Danny Fokou.

3. Award reasonable attorney's fees and costs of the Court under the Equal Access to Justice Act; and

4. Grant such other and further relief as this Court deems proper.

Respectfully submitted on this 29th day of December, 2017.

Danielle Beach-Oswald
*Counsel for Plaintiffs*
DC Bar # 489356
Beach-Oswald Immigration Law Assocs., P.C.
888 17th St. N.W., Suite 310
Washington, D.C. 20006
Tel: (202) 331-3084

## LIST OF ATTACHMENTS

*Description*

1.      Copy of BIA's decision dated November 29, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-27
2.      Copy of USCIS's denial dated June 2, 2017. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28-36