UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERNEST NGONGA, *et al.*,

    Plaintiffs,

    v.

JEFFERSON B. SESSIONS III, Attorney General for the United States, *et al.*,

    Defendants.

Civil Action No. 17-2828 (JEB)

## MEMORANDUM OPINION

Plaintiffs Ernest Ngonga and Danny Fokou, a married couple residing in Lovettsville, Virginia, seek a reversal of the United States Citizenship and Immigration Services' Washington Field Office's denial of Ngonga's visa petition on behalf of Fokou. When the Field Office Director determined that Fokou's prior marriage had been entered into for the purposes of obtaining an immigration benefit, she denied Ngonga's Form I-130 (Petition for Alien Relative), a decision later affirmed by the Board of Immigration Appeals. See Compl., ¶¶ 1-2. Plaintiffs responded by filing this suit in December 2017, contending that such denial was arbitrary and capricious, an abuse of discretion, and unsupported by "substantial and probative evidence" of marriage fraud. Id., ¶ 1. Defendants — the Attorney General, the Washington Field Office Director, the District Director of the Department of Homeland Security for that Field Office, the Secretary of DHS, and the Director of USCIS — now move to transfer this case to the Eastern District of Virginia. As the relevant factors favor transfer, the Court will grant Defendants' Motion.

I.    Background

According to the Complaint and its attached exhibit, Plaintiffs Danny Fokou, a native and citizen of Cameroon, and Ernest Ngonga, a lawful permanent resident of the United States, are a married couple with three children who live in Lovettsville, Virginia.  See Compl., ¶ 12.  Fokou was previously married to Valery Keyi, a naturalized United States citizen and native of Cameroon.  Id., ¶ 14; ECF No. 1-2 (Petition Decisions) at 7.  At the time of her marriage to Keyi in May 2008, Fokou was pregnant with Ngonga's second child.  See Compl., ¶ 14.  After Keyi filed and subsequently withdrew an I-130 Petition for Fokou in 2009, she was temporarily placed in removal proceedings.  See Petition Decisions at 9.  Keyi and Fokou divorced in July 2010, and Plaintiffs married that September.  Id.

Ngonga then filed an I-130 Petition on behalf of Fokou in December 2010, seeking to have her "classified as the spouse of a lawful permanent resident under section 203(a) of the Immigration and Nationality Act."  Id. at 5, 9.  In USCIS's evaluation of this application, it discovered Fokou's prior marriage to Keyi.  Although Plaintiffs maintain that that marriage was "bona fide" and "for love, [and] for no other reason," Compl., ¶ 14, Kimberly Zanotti, the USCIS Washington Field Office Director, apparently saw it differently.  Citing Ngonga's statement in his 2014 naturalization interview that Fokou had married Keyi for immigration purposes, as well as discrepancies in Keyi's withdrawn I-130 Petition and purported irregularities in Fokou and Keyi's marriage, Zanotti determined that the marriage was "entered into . . . for the sole purpose of circumventing immigration laws of the United States."  Petition Decisions at 10.  Ngonga's I-130 Petition was consequently denied on June 2, 2017, pursuant to Section 204(c) of the Immigration and Nationality Act, which forecloses benefits if an "alien has attempted or conspired to enter into marriage for the purpose of evading the immigration laws."  8 U.S.C. §

2

1154(c); see also Petition Decisions at 10. This decision was upheld some five months later by the BIA in Falls Church, Virginia. See Petition Decisions at 2.

Plaintiffs subsequently brought this suit in December 2017, claiming that the denial of the I-130 Petition was arbitrary and capricious and therefore in contravention of the Administrative Procedure Act. See Compl., ¶ 1. Contending that the Petition was instead "supported by overwhelming evidence demonstrating the bona fide nature of the Plaintiffs' marriage" and that "the evidentiary record does not support USCIS's allegation of prior marriage fraud," they challenge Defendants' application of Section 204(c) of the INA and seek a reversal of the denial of the I-130 Petition. Id., ¶¶ 1-3. Defendants now move to transfer the case to the Eastern District of Virginia.

## II. Legal Standard

Even if a plaintiff has brought its case in a proper venue, a district court may, "[f]or the convenience of parties and witnesses, in the interests of justice . . . transfer [it] . . . to any other district . . . where [the case] might have been brought." 28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

This Court has previously explained the standard for a transfer of venue under § 1404(a):

> To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district. Treppel v. Reason, 793 F. Supp. 2d 429, 435 (D.D.C. 2011). The movant must also show that "considerations of convenience and the interest of justice weigh in favor of transfer . . . ." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake. Stewart Org., 487 U.S. at 29. The burden is on the moving party to establish that transfer is proper. Trout

3

Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).

Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013). Although Plaintiffs and Defendants disagree about whether venue is proper in this District, the Court need not wade into that controversy today. Instead, it will proceed with the § 1404(a) transfer framework outlined above, first examining whether this case could have been brought in the Eastern District of Virginia and next looking at the private- and public-interest factors relevant to transfer.

### III. Analysis

#### A. Propriety of New Venue

As Plaintiffs have filed suit against federal officers and employees acting in their official capacity, venue is governed by 28 U.S.C. § 1391(e). Under that section, venue is proper in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . .[,] or (C) the plaintiff resides if no real property is involved in the action." As Plaintiffs currently reside in Lovettsville, Virginia — within the jurisdiction of the Eastern District of Virginia — this preliminary hurdle is easily cleared. See Compl., ¶ 10.

#### B. Private- and Public-Interest Factors

The "private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Douglas, 918 F. Supp. 2d at 31 (citation omitted). "The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." Id. (citation omitted).

1. *Private-Interest Factors*

To streamline its analysis, the Court collapses the six aforementioned private-interest factors into four.

　　a. Plaintiff's Choice of Forum

While a plaintiff's choice of forum is usually given deference, this deference is "not always warranted where the plaintiff's choice of forum has no meaningful ties to the controversy, and where transfer is sought to a forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected." Jimenez v. R&D Masonry, Inc., 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) (citation, alterations, and internal quotation marks omitted). "Indeed, when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, there is little reason to defer to the plaintiff's preference." Id. (citation and internal quotation marks omitted).

Plaintiffs contend that such meaningful ties exist in this District because the USCIS Washington Field Office, which covers Washington, D.C., made a final decision on the I-130 application. See Opp. at 5-6. As Defendants note, however, this Office also covers Virginia, where Plaintiffs' own documents show the Office is located. See Mot. at 6; ECF No. 11-1 (Field Office Information). The determination on the challenged Petition occurred in Fairfax, moreover, and Plaintiffs' subsequent appeal was handled by the BIA in Falls Church. See ECF No. 9-1 (Declaration of Kimberly Zanotti), ¶¶ 3-5. As the subject matter of this suit is thus connected to the Eastern District of Virginia, which is also Plaintiffs' home forum, Plaintiffs' choice of forum receives no deference.

b.  Defendants' Choice of Forum

While a defendant's choice of forum is relevant to deciding a § 1404(a) motion, it is "not ordinarily entitled to deference." Tower Labs, Ltd. v. Lush Cosmetics Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018). As Defendants have moved to transfer, "they must establish that the added convenience and justice of litigating in their chosen forum overcomes" any deference to the Plaintiffs' choice of venue. Id. Since, as just discussed, Plaintiffs receive no deference, and as these other interests favor transfer, Defendants receive some deference for their choice of forum.

c.  Whether Claim Arose Elsewhere

The Court now turns to the location where Plaintiffs' claim arose. "When the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum, transfer is favored." Id. "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009).

As previously discussed, the USCIS Washington Field Office in Fairfax and the BIA in Falls Church made all decisions regarding Plaintiffs' particular I-130 application. See Zanotti Decl., ¶¶ 3-5. The Fairfax Office conducted an interview with Plaintiffs, issued the preliminary Notice of Intent to Deny, and ultimately denied the I-130 Petition, a decision upheld by the BIA in Falls Church. Id., ¶¶ 4-5. At each point along the route of Plaintiffs' contested I-130 Petition, the "decisionmaking process" that forms the "factual predicate" of their APA claim occurred in the Eastern District of Virginia.

To the extent that Plaintiffs seek to establish a nexus between their claim and this District by naming high-ranking government officers as Defendants, the Court remains wary that "a plaintiff might manufacture venue in the District of Columbia [b]y naming high government

officials as defendants." Cameron v. Thornburg, 983 F.2d 253, 256 (D.C. Cir. 1993). Such officials include, of course, the Attorney General, the Director of USCIS, and the Secretary of DHS. While Plaintiffs maintain that "the [DHS and USCIS] Directors [*sic*] played a role in the adjudication of Plaintiff's Form I-130," their support for this contention is only the truism that the Director and Secretary "are responsible for the agenc[ies]" and the general allegation that the Director of USCIS "directs policies of Field Offices in their decision making." Opp. at 5. As Plaintiffs' Complaint makes clear, however, their claim fundamentally revolves around the Washington Field Office's denial of their I-130 Petition, and they do not allege that any of the senior officials named were personally involved in this decision. The inclusion of the aforementioned officials therefore does not sway the balance of this factor, which strongly favors transfer.

        d. Convenience of Parties, Convenience of Witnesses, and Ease of Access to Sources of Proof

The final three factors, which relate to convenience, "do not weigh heavily in favor of either venue, given the close proximity of the District of Columbia and the Eastern District of Virginia." Douglas, 918 F. Supp. 2d at 32-33. Plaintiffs make limited attempts to promote the convenience of this District, citing the location of counsel and, somewhat confusingly, of the Washington Field Office in Fairfax. See Opp. at 6. The Court does not find these factors to be particularly informative in the present case, however, and thus views them as neutral.

As a result, the private-interest factors, taken together, favor transfer.

    2. *Public-Interest Factors*

The public-interest factors are not quite as dispositive as the private-interest ones, but they similarly point in the direction of transfer.

7

a. Transferee Court's Familiarity with Governing Laws

Neither party raises any mention of the Eastern District of Virginia's familiarity with governing law, and for good reason; as the case solely involves federal statutes, that court can more than capably handle this case. See Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor"). This factor, therefore, is in equipoise.

b. Relative Congestion of the Courts

Defendants raise the specter of future congestion should Plaintiffs be able to remain in this District simply by suing high-ranking officials. See Mot. at 8. While the Court is alert to this concern, it will limit its consideration of docket congestion to any current discrepancy between this District and the Eastern District of Virginia. As neither party has made a showing that the current caseloads of either District would have a bearing on the disposition of this action, the Court finds this factor neutral as well. See Nat'l Ass'n of Home Builders, 675 F. Supp. 2d at 178.

c. Local Interest in Controversies

The Court now arrives at the last consideration for a discretionary transfer under § 1404(a): the local interest in deciding controversies. "Controversies should be resolved in the locale where they arise," a "policy rationale [that] applies equally to the judicial review of an administrative decision which will be limited to the administrative record." Trout Unlimited, 944 F. Supp. 13 at 19. As the decision on and appeal of Plaintiffs' challenged I-130 determination occurred in the Eastern District of Virginia and Plaintiffs now seek judicial review under the APA, the Court will heed this rationale and find that the final factor favors transfer.

Plaintiffs lob one last contention — that a transfer of venue in this case of "national significance" would set a "dangerous precedent," as Defendants would not be "accountable in [the] District of Columbia." Opp. at 5. Although recent events show that immigration policy is undoubtedly of immense national interest, see Damus v. Nielsen, 2018 WL 3232515 (D.D.C. July 2, 2018), the Court finds that the instant case, which challenges an adverse decision on one visa petition, presents an issue of far more limited importance. Plaintiffs will remain able to pursue their claims against Defendants upon transfer to the Eastern District of Virginia.

In sum, the public-interest factors similarly favor transfer.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting the Motion and transferring the case to the Eastern District of Virginia.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 25, 2018